**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEREK ZINK, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BELLE TIRE DISTRIBUTORS, INC.,

Defendant.

JURY TRIAL DEMANDED

Case No. 25-cv-13527

Hon.

---

David M. Blanchard (P67190)
BLANCHARD & WALKER, PLLC
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com

Kevin J. Dolley (#54132MO)
HKM Employment Attorneys LLP
7382 Pershing Avenue, Suite 1W
St. Louis, MO 63130
Phone/Fax: (314) 642-6577
kdolley@hkm.com

*Attorneys for Plaintiff*

---

**PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff Derek Zink, by and through counsel, individually and on behalf of all others similarly situated, alleges as follows against Defendant Belle Tire Distributors, Inc.

## JURISDICTION AND VENUE

1. Subject matter jurisdiction exists under 28 U.S.C. § 1331 and 29 U.S.C. §§ 216(b) and 217 because this action includes wage and hour claims arising under the Fair Labor Standards Act ("FLSA").

2. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is located in this District and a substantial part of the events or omissions giving rise to the claims occurred here, including compensation policies and decisions made at Defendant's corporate headquarters in Allen Park, Michigan.

## PARTIES

3. Plaintiff Derek Zink is an adult resident of Illinois. He works for Belle Tire in Alsip, Illinois, and is an employee within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1). Plaintiff consents to this action. *See* **Exhibit 1**.

4. Defendant Belle Tire Distributors, Inc. ("Belle Tire") is a Michigan for profit corporation with its principal place of business and corporate headquarters in Allen Park, Michigan.

5. Belle Tire employed Plaintiff and is an employer and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(d) and 203(s)(1)(A).

6. At all relevant times, Belle Tire's annual gross volume of sales made or business done was at least $500,000, and it employed at least two employees who regularly handled goods or materials that moved in interstate commerce.

7. While employed by Belle Tire, Plaintiff was engaged in commerce and in the production of goods for commerce, and he handled goods and materials that moved in interstate commerce.

## FACTUAL BACKGROUND

8. Defendant Belle Tire operates retail tire and automotive-service locations in multiple states, including Illinois and Michigan. The company combines tire sales with general automotive services performed in retail stores like the Alsip, Illinois location.

9. Plaintiff Derek Zink works as an alignment technician at the Alsip store. His primary duties consist of wheel alignments and related mechanical repairs. The company's own job materials describe an alignment technician as someone who performs alignments, oil changes, and other repairs as needed.

10. Plaintiff regularly worked more than forty hours per workweek. Belle Tire scheduled him to work approximately forty-eight hours weekly, and managers never told him he was exempt from overtime.

11. Belle Tire uses a purported commission plan in an effort to evade paying overtime premiums to non-exempt employees, such as Plaintiff.

12. The purported plan contained a weekly "guarantee" that alignment and service technicians would be paid a minimum amount each week. If technicians' calculated commissions exceeded the weekly guarantee, they would be paid those calculated commissions. If their calculated commissions were less than the weekly minimum, they would be paid those calculated commissions plus an amount to make up for the shortfall. These amounts were reflected on the pay statements as "Commission" and "Guarantee" respectively.

13. In other words, for weeks where calculated commissions fell short of the weekly guarantee, technicians earned wages equal to only the guaranteed sum, and did not earn commissions on top of that sum.

14. At hire, Belle Tire told Plaintiff the position was commission-based at eighteen percent, with a guaranteed weekly amount that would be paid whenever commissions fell short of the guarantee. The initial written offer reflected a guarantee based on a forty-eight-hour workweek with commission at eighteen percent, followed by a later memo that set a $1,500 weekly guarantee through

September 30, 2024, and expressly expected alignment technicians to work a minimum of forty-eight hours per week.

15. In reality, the "commission" pay plan at issue is not a commission plan at all.

16. Defendant's purported commission plan provides a fixed dollar amount per alignment and, for other mechanical work, credits eighteen percent of the labor amount and eighteen percent of the parts profit.

17. The mechanic-commission register therefore shows the same credit amount for each alignment line, a constant $23 for Plaintiff, and the same oil change credit, for Plaintiff $10, regardless of the price charged to the customer. This indicates a fixed piece rate structure untethered to sales price—i.e., not a commission.

18. Throughout his employment, Plaintiff's calculated commissions never exceeded the total weekly guarantee, so Plaintiff never earned more than that minimum guarantee. Stated differently, there was never a real commission plan, in that, there was never a structure in place that would result in the actual payment of a calculated commission beyond the set fixed amount Plaintiff was paid as a guarantee each week.

19. Defendant tracked overtime hours during the statutory period, listing the overtime hours that employees worked but paying zero dollars for those hours.

20. For example, the paystub for the week of November 19–25, 2023, shows that Plaintiff worked 51.7833 hours and lists 10.9833 overtime hours yet Plaintiff's gross pay equals the weekly guarantee of $1,500 because the commission amount was calculated as only $646.52 with zero dollars paid on the "Overtime @ 1.5" line.

21. The same pattern appears in other weeks. For June 23–29, 2025, the statement reflects 48.2 hours with 8.2 overtime hours shown, yet gross pay again equals $1,500, with the Commission amount well below the guarantee amount and zero dollars as to the "Overtime @ 1.5" line.

22. In July, 2025, Defendant implemented a new, reduced guarantee amount of $1,125—cutting pay by approximately 25% without advance written notice. Meanwhile, Defendant continued to schedule technicians approximately forty-eight hours per workweek. Management later characterized the change as a company-wide decision that would not be reversed.

23. After this cut, the same patterns continued. The pay records continued to display overtime hours with no corresponding overtime pay, and Plaintiff's calculated commissions continued to fall short of the weekly minimum.

24. For July 7–13, 2025, Plaintiff's pay statement shows gross pay equals $1,125 with calculated Commission far below this guarantee amount and with zero dollars on "Overtime @ 1.5" despite overtime hours worked.

25. Likewise, for the pay period October 6–12, 2025, Plaintiff worked 49.20 total hours, including 8.25 overtime hours, as shown on the "Overtime @ 1.5" line, but no overtime was paid. The pay statement shows the commission amount and a "Minimum Wage Ad" contributing to gross pay, with no overtime dollars paid. Net pay for that week was $604.

26. Internal compensation information lists Plaintiff with an hourly classification and scheduled hours of forty per week. Yet, as indicated above, management scheduled him for approximately forty-eight hours weekly and did not pay overtime to an hourly employee.

27. Plaintiff clocked in and out each day. Whether the time recorded exceeded forty-eight hours or dipped slightly below, weekly pay remained anchored to the guarantee with minor fluctuations. When a holiday fell on a Monday, Belle Tire moved Plaintiff's day off to Monday and required Plaintiff to work on his usual day off with no change in his weekly pay.

28. Plaintiff previously questioned the mandatory forty-eight-hour schedule. In response, the district manager told him the schedule existed to qualify employees for benefits.

29. Plaintiff found this explanation inconsistent. For one thing, Plaintiff did not utilize such benefits. And for another, this practice was out of line with

industry practice, where overtime is offered as needed and is compensated, rather than required without overtime pay.

30. What is more, sales staff of Defendant generated the work orders that technicians performed. Plaintiff neither made sales nor set prices, and the purported commission structure tied technician pay to sales activity in which he did not engage.

31. Labeling fixed piece-rate credits as "commissions" did not change how pay functioned in practice. The mechanic-commission report shows that the alignment credit remained a flat amount regardless of whether the customer was charged \$109.99, \$94.99, or another amount, and an oil-change credit remained \$10, regardless of what the customer paid for the oil change. There is no meaningful proportionality between the amounts credited to technicians and the amounts charged to customers.

32. Plaintiff's weekly compensation moved only minimally around the guaranteed amount. In weeks when total hours exceeded forty, the overtime line showed hours but zero dollars, and Plaintiff's pay did not increase based on overtime worked. Gross pay equaled the sum of the Commission and Mech Guarantee lines—the calculated commissions plus the difference between those commissions and the minimum guarantee. The weekly guarantee predominated, and the compensation plan did not pay an overtime premium when hours exceeded forty.

33. Plaintiff and similarly situated technicians were compensated entirely or almost entirely by fixed piece credits for alignments and oil changes and/or by a weekly guarantee that predominated the pay structure. Commissions did not constitute more than one half of total earnings; rather, the guarantee controlled the pay outcome.

34. Belle Tire required a forty-eight-hour schedule for alignment technicians and set out the weekly guarantee structure that governed pay.

35. Belle Tire previously resolved an FLSA collective action in or about January 2022 that challenged materially similar overtime practices. That prior litigation and the continued use of a weekly guarantee that eclipsed the purported commission supports the finding of willfulness.

36. At all relevant times, Plaintiff and similarly situated technicians were non-exempt employees entitled to overtime compensation for hours worked over forty in a workweek.

37. Plaintiff and similarly situated technicians did not make retail sales or set prices, and their pay did not rise and fall with sales results.

38. The compensation structure in question operated as a fixed weekly guarantee with piece-rate credits, not as a *bona fide* commission system, and it did not pay the legally required overtime premium when hours exceeded forty.

39. The pay records, including mechanic commission reports and weekly statements, show overtime hours recorded while the "Overtime @ 1.5" line remained at zero dollars, and show gross pay equal to the sum of "Commission" and "Mech Guarantee," with the guarantee predominating.

40. Pay statements from 2023 and 2025 exemplify the challenged plan by listing overtime hours while showing zero dollars on the overtime line, and by fixing weekly gross pay as the sum of Commission and Mech Guarantee, regardless of hours worked beyond forty and this pattern continued even after the guarantee was reduced.

41. Commission reports credit a fixed per alignment amount and reflect that the technician's pay credit does not vary with the price charged to the customer, underscoring that the plan functions as a piece-rate system rather than a bona fide commission plan.

42. Defendant's compensation policies and practices described above were developed and administered on an enterprise-wide basis from corporate headquarters and applied at the store locations, including the Alsip, Illinois store where Plaintiff worked. These practices nearly always yielded the same take-home pay anchored to the weekly guarantee, even as total hours worked fluctuated and exceeded forty hours per week.

43. As a result of these policies and practices, Plaintiff and those similarly situated were not paid overtime premiums required by law for hours worked over forty in a workweek.

44. The Section 7(i) commissioned-employee exemption does not apply because more than one half of technicians' earnings in representative periods did not consist of bona fide commissions on goods or services, and the plan credited fixed piece amounts unrelated to selling price or sales made by the technician, thus demonstrating an illusory commission plan assertion that functioned as weekly compensation without overtime pay.

## COLLECTIVE ACTION ALLEGATIONS (FLSA § 216(b))

45. Plaintiff brings this action as a collective under 29 U.S.C. § 216(b) on behalf of himself and all other similarly situated current and former alignment technicians and service technicians employed by Belle Tire during the three-year period preceding the filing of this Complaint who were paid under a weekly "mechanic guarantee" with a purported commission overlay and were not paid an overtime premium for hours worked over forty in a workweek (the "FLSA Collective"). Defendant operates retail tire and automotive service locations in multiple states, including Illinois and Michigan.

46. Belle Tire maintained uniform compensation and scheduling policies for alignment and service technicians. These corporate documents reflect a single pay plan administered from headquarters and applied at the store level.

47. Plaintiff and the FLSA Collective are similarly situated. They performed substantially similar work as alignment or service technicians, were routinely scheduled for at least forty-eight hours each week under the same guarantee policy, and were paid under the same compensation system that omitted an overtime premium when hours exceeded forty. The similarity of duties, schedules, pay codes, and pay calculations presents common questions that turn on Defendant's plan rather than individual variations.

48. These claims will be resolved through common proof of Defendant's uniform pay and scheduling practices, including corporate documents as to a forty-eight-hour schedule, payroll and timekeeping records that show overtime hours without overtime pay, and commission reports that credit fixed amounts per service rather than commissions tied to sales.

49. Whether this plan constitutes a bona fide commission arrangement and whether overtime premiums were unlawfully withheld are class-wide merits issues suited to collective adjudication.

50. Belle Tire can identify the FLSA Collective from its centralized timekeeping and payroll and HRIS systems, including time records, pay statements,

commission reports, and internal employee compensation profiles. Names, last known addresses, email addresses, and mobile numbers of putative members are within Defendant's possession.

51. Court-authorized notice by mail, email, and text message is a fair and efficient means to inform putative collective members of their right to join this case by filing written consents.

52. Defendant's earlier settlement of materially similar overtime claims supports willfulness and the three-year limitations period under the FLSA.

**RULE 23 CLASS ACTION ALLEGATIONS (Illinois Law)**

53. In addition to the FLSA Collective, Plaintiff brings Illinois state-law claims under Federal Rule of Civil Procedure 23 on behalf of a class of alignment technicians and service technicians employed by Belle Tire in Illinois during the applicable limitations periods who were not paid overtime premiums for hours worked over forty in a workweek while paid under the weekly guarantee with a purported commission overlay, and a related subclass of those whose weekly guaranteed pay was reduced without advance written notice required by Illinois wage law and regulations (the "Rule 23 Class").

54. The Rule 23 Class is numerous. Belle Tire represents that it operates more than 140 retail locations and employs more than 2,500 people across Michigan,

Indiana, Illinois, and Ohio. Illinois technicians affected by the challenged plan are sufficiently many that joinder is impracticable.

55. Common questions of law and fact predominate. Whether Belle Tire failed to pay overtime required by the Illinois Minimum Wage Law when technicians worked more than forty hours under the guarantee plan, and whether Belle Tire reduced guaranteed weekly pay without the notice Illinois law requires, are issues that turn on Defendant's uniform policies, records, and forms. Proof will center on the same corporate documents, pay statements, scheduling practices, and commission reports described above.

56. Plaintiff's claims are typical. He worked as an alignment technician in Illinois, was scheduled for approximately forty-eight hours each week under the same guarantee plan, received pay statements that recorded overtime hours while listing zero dollars on the overtime line, and experienced the unilateral reduction of the weekly guarantee. His legal theories and the relief sought mirror those of the Class.

57. Plaintiff will fairly and adequately protect the interests of the Rule 23 Class. He seeks recovery for the same injuries that class members suffered and has retained counsel experienced in wage-and-hour class and collective litigation.

58. A class action is superior to other methods for fairly and efficiently adjudicating these state-law claims. Proceeding on a class basis will promote

consistent results, conserve judicial resources, and avoid the risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendant. Defendant's liability turns on common evidence of a centralized pay plan.

59. The Rule 23 Class is ascertainable. Membership can be determined by objective criteria reflected in Defendant's payroll, timekeeping, and human-resources data, including job title, store, pay codes, total weekly hours, and any recorded changes to the guaranteed weekly amount.

60. Common proof will include, among other things, the offer letters, the 2024 guarantee memo requiring a minimum forty-eight-hour schedule and setting a weekly guarantee, pay statements that reflect overtime hours but no overtime dollars and show gross pay as Commission plus Mech Guarantee, and commission reports that credit a flat amount per alignment irrespective of price.

61. Plaintiff seeks certification of the Rule 23 Class, appointment as class representative, appointment of class counsel, and an order requiring that notice issue to class members by mail, email, and text. Plaintiff seeks damages, statutory remedies, restitution, declaratory relief, injunctive relief, pre- and post-judgment interest, and reasonable attorneys' fees and costs, as permitted by law.

## COUNT I
**Fair Labor Standards Act, 29 U.S.C. § 201 et seq.**
**Failure to Pay Overtime Premiums**

62. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

63. At all relevant times, Defendant Belle Tire was an employer of Plaintiff and the FLSA Collective within the meaning of 29 U.S.C. § 203(d), and Plaintiff and the FLSA Collective were employees within the meaning of 29 U.S.C. § 203(e).

64. Defendant maintained a common policy of failing to pay overtime compensation to the above-described employees, which injured Plaintiff and the FLSA Collective.

65. The FLSA requires employers to pay non-exempt employees one- and one-half times their regular rate of pay for all hours worked over forty in a workweek. 29 U.S.C. § 207(a).

66. Plaintiff and the FLSA Collective regularly worked more than forty hours in a workweek for Defendant, yet Defendant did not pay the required overtime premium. Pay statements listed overtime hours but showed zero dollars of overtime pay.

67. Plaintiff and the FLSA Collective were not exempt executive, administrative or professional employees, and were not employed under a Belo plan or any other bona fide individual contract within the meaning of 29 U.S.C. § 207(f).

68. No exemption applies. The commissioned-employee exemption in § 7(i) does not apply because Plaintiff and the FLSA Collective did not make sales,

did not set prices, were not paid based on amounts charged to customers, and less than one half of total earnings consisted of bona fide commissions. 29 U.S.C. § 207(i).

69. Defendant knew or should have known that its compensation practices violated the FLSA and acted willfully and not in good faith, including in light of prior litigation over materially similar wage and hour practices.

70. As a direct and proximate result, Plaintiff and the FLSA Collective lost overtime wages and are entitled to recover unpaid overtime for up to three years prior to the filing of their claims, liquidated damages, reasonable attorneys' fees and costs, and prejudgment interest to the extent liquidated damages are not awarded.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendant and award conditional certification of this case as a collective action under 29 U.S.C. § 216(b) with notice to similarly situated employees and an opportunity to opt in; unpaid overtime wages due under the FLSA; liquidated damages in an amount equal to the unpaid overtime; reasonable attorneys' fees and costs under 29 U.S.C. § 216(b); a service award to Plaintiff; pre-judgment and post-judgment interest; and such other legal and equitable relief as the Court deems just and proper.

## COUNT II
## Violation of the Illinois Minimum Wage Law

**Overtime Wages, 820 ILCS 105/1 *et seq*.**

71. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

72. Defendant violated the Illinois Minimum Wage Law, 820 ILCS 105/4a, by failing to pay overtime wages to Plaintiff and similarly situated employees.

73. Plaintiff and similarly situated employees were not exempt from overtime requirements and were entitled to overtime compensation.

74. Plaintiff and similarly situated employees worked more than 40 hours in one or more work weeks and were not paid at one-and-one-half times their regular rate for those hours as the IMWL requires.

75. Defendant employed Plaintiff and similarly situated employees within the meaning of 820 ILCS 105/3(c).

76. Defendant's violations were knowing and willful.

77. These claims are timely under the three-year statute of limitations under Illinois law.

78. Under 820 ILCS 105/12(a), Plaintiff and similarly situated employees are entitled to treble the amount of underpaid wages, statutory damages of five percent per month for each month any underpayment remains unpaid, and reasonable attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiff and those similarly situated respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Certifying a Rule 23 class of technicians and mechanics employed by Defendant in Illinois during the applicable limitations period;
B. Appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;
C. Awarding all unpaid wages and overtime compensation owed under the IMWL;
D. Awarding treble damages under 820 ILCS 105/12(a);
E. Awarding statutory damages of five percent per month on all underpaid wages for each month any underpayment remains unpaid;
F. Awarding reasonable attorneys' fees, costs, and expenses, and a service award to Plaintiff;
G. Awarding prejudgment interest as permitted by law; and
H. Granting such other and further relief as the Court deems just and proper.

## COUNT III
**Violation of the Illinois Wage Payment and Collection Act**
**Class Claim, 820 ILCS 115/1 *et seq*.**

79. Plaintiff realleges and incorporates the preceding paragraphs.

80. Plaintiff brings this claim on behalf of Plaintiff and similarly situated technicians and mechanics employed in Illinois whose pay rate was reduced without the advance notice required by the Act and its regulations.

81. The Illinois Wage Payment and Collection Act (the Act) requires employers to inform employees, at hiring, of the rate of pay and the time and place of payment, and to notify employees of any change to those terms before the change takes effect. 820 ILCS 115/10.

82. Illinois regulations require that any change to an agreed wage or compensation be communicated before the effective date and, absent extraordinary circumstances, be in writing and given to the employee. 56 Ill. Admin. Code § 300.630.

83. Plaintiff and the putative class received no advance written notice of the reduction in their weekly guarantee implemented in or about July 2025.

84. By reducing wages without the required advance notice, Defendant violated the Act.

WHEREFORE, Plaintiff and the class request entry of judgment in their favor and against Defendant certifying a Rule 23 class for this claim; awarding all wages due and unpaid under the Act; awarding statutory damages under 820 ILCS 115/14(a) together with reasonable attorneys' fees and costs; a service award to

Plaintiff; awarding pre-judgment and post-judgment interest as permitted by law; and granting such other and further relief as the Court deems just and proper.

Respectfully Submitted,

By: *_____/s/ David M. Blanchard_____*

David M. Blanchard (P67190)
Blanchard & Walker PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com

Dated: November 5, 2025

Kevin J. Dolley, #54132MO
HKM Employment Attorneys LLP
7382 Pershing Avenue, Suite 1W
St. Louis, MO 63130
Phone/Fax: (314) 642-6577
kdolley@hkm.com

*Counsel for Plaintiff*