UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DEREK ZINK,**<br>Plaintiff,<br><br>vs.<br><br>**BELLE TIRE DISTRIBUTORS, INC.,**<br>Defendant. | **2:25-CV-13527-TGB-DRG**<br>**HON. TERRENCE G. BERG**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF NO. 7)**<br>**AND DISMISSING THE CASE.** |

Plaintiff Derek Zink brings this putative class and collective action against Defendant Belle Tire Distributors, Inc. ("Belle Tire"), alleging that Belle Tire failed to pay overtime wages to Zink and similarly situated employees and reduced their pay rate without the required advance notice. ECF No. 1.

Belle Tire has filed a motion to compel individual arbitration, dismiss Plaintiff's class and collective action claims, and dismiss or stay Plaintiff's individual claims pending arbitration (the "motion to compel arbitration"). ECF No. 7. Plaintiff has responded, ECF No. 10, and Belle Tire has replied, ECF No. 11. On August 10, 2026, the Court held a hearing on the matter.

For the following reasons, the Court **GRANTS** Belle Tire's motion to compel arbitration (ECF No. 7) and **DISMISSES** the case **WITHOUT PREJUDICE**.

## I. BACKGROUND

The following facts are undisputed, unless otherwise noted.

Defendant Belle Tire is a Michigan corporation that operates automotive service centers. ECF No. 7-2, PageID.70. Belle Tire employs Alignment Technicians, Tire Technicians, Auto Technicians, store managers, and other employees. *Id.*

Plaintiff Derek Zink worked for Belle Tire as an alignment technician in Alsip, Illinois from May 22, 2023 to January 3, 2026. *Id.* at PageID.71; ECF No. 10-1, PageID.125.

On November 5, 2025, Zink brought a putative class and collective action against Belle Tire. ECF No. 1. Zink alleges the following counts: (I) violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, for failing to pay overtime premiums to Zink and members of the proposed collective; (II) violation of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, for failure to pay overtime wages to Plaintiff Zink and similarly situated employees; and (III) violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, for reducing the pay rate of Plaintiff Zink and similarly situated employees without the required advance notice. *Id.*

On February 6, 2026, Belle Tire filed a motion to compel individual arbitration, dismiss Zink's class and collective action claims, and dismiss or stay Zink's individual claims pending arbitration. ECF No. 7. Zink

responded on March 6, 2026, ECF No. 10, and Belle Tire replied on March 19, 2026, ECF No. 11.

In its motion to compel individual arbitration, Belle Tire relies on two agreements it contends Zink entered during his employment: an arbitration clause contained in the 2021 Handbook Acknowledgement Document, which Zink signed in 2023; and a standalone 2025 "Alternative Dispute Resolution Agreement," which Belle Tire contends Zink agreed to. ECF No. 7, PageID.56–65.

**1. 2021 Handbook Acknowledgement Document**

The 2021 version of Belle Tire's employee handbook included an acknowledgment form[1] (the "2021 Handbook Acknowledgement Document"). ECF No. 7-3, PageID.75; ECF No. 7, PageID.47–48.

That document, labelled "Acknowledgement" states

> I hereby acknowledge review of the Employee Handbook (the "Handbook") of Belle Tire Distributors, Inc. ("BTD" or the "Company"). I understand and agree that it is my responsibility to read and comply with the policies in the Handbook.
>
> Except for the Company's policies regarding employment-at-will, limitations of action and the agreement to arbitrate disputes (as set forth in the Handbook and/or summarized in this Acknowledgement below), the information, policies, procedures and benefits described in the Handbook are

[1] The applicable documents and briefs use both "acknowledgement" and "acknowledgment." For the sake of consistency, the Court will use "acknowledgment" unless it is quoting or referring to the title of a document that use the alternative spelling.

> subject to change. I acknowledge that such revisions to the Handbook policies, procedures and benefits may occur, and I am responsible to review and comply with those changes.

ECF No. 7-3, PageID.75.

The document also contains a section labelled "At-Will Employment," stating

> The employment relationship between the Company and each employee is terminable at-will by either party at any time, with or without prior notice and with or without cause. This provision may not be modified or altered in any way unless in writing specifically addressed solely to the employee and personally signed by the CEO or President.

*Id.*

Next, the document contained an "Agreement to Arbitrate Disputes." That clause provides that

> I agree that if I have any dispute with the Company or any of its officers, agents or employees (past, current or future) concerning my employment or the termination of employment (including, but not limited to, any allegation for wages, benefits, breach of contract, discrimination, harassment or retaliation) such dispute shall be submitted to arbitration administered by the American Arbitration Association under its Employment Arbitration Rules. I further agree to accept the arbitrator's award as final and binding upon me. A Judgment upon the award shall be entered in the state court of the county in which I am or was employed, or the federal court having jurisdiction over the place of my employment, as applicable under the circumstances.
>
> I am waiving my right to adjudicate these claims in a judicial forum, courtroom or administrative agency and opting,

> instead, to arbitrate. I also agree to pursue any claims in arbitration on an individual basis, and not as a class, collective or representative action, and I will opt out or [sic] any class, collective or representative action that is filed against the Company.

*Id.* (The "sic" inserted in this quoted language is to note that the phrase "I will opt out **or** any class" could be a typographical error that should properly be "I will opt out **of** any class." But this possible error is not material to the Court's reading of the document or its reasoning.).

The document also contained a section stating that "This Agreement shall be binding on the heirs and representatives of the parties hereto and shall be interpreted under and in accordance with the laws of the State of Michigan." *Id.*

At the bottom, the document contains a signature line. *Id.*

Belle Tire "required employees to review, via hyperlink, the 2021 Belle Tire Handbook and the accompanying Acknowledgment form and to confirm, by checking a box, that they had reviewed and accepted the terms of both documents." ECF No. 7-2, PageID.72; ECF No. 7, PageID.48. As explained by Beth Kilpatrick, Belle Tire's Chief People Officer, "[u]pon checking the box, the form generated a 'Yes' designation next to the provision, reflecting the employee's acceptance of the Acknowledgment form terms." ECF No. 7-2, PageID.72.

During Zink's onboarding process with Belle Tire, he was provided with a copy of the 2021 version of Belle Tire's employee handbook and

the acknowledgment form. ECF No. 7-4, PageID.78; ECF No. 7, PageID.49; ECF No. 7-2, PageID.71.

To show that Zink accepted the terms of the 2021 Belle Tire Handbook Acknowledgement Document, Belle Tire submitted a record generated dated to May 18, 2023. ECF No. 7-4. The document includes, in relevant part, Zink's address and redacted direct deposit information, a section labelled "Policy Acknowledgement Form," and a section labelled "Esign/Acknowledgement" *Id.*

The first item of the Policy Acknowledgement Form section states, "By checking the box, I acknowledge that I have reviewed the Belle Tire 2021 Handbook and Handbook Acknowledgement Document and I accept the terms of the Handbook Acknowledgement Document." ECF No. 7-4, PageID.78. Next to this text, the section states "Yes." *Id.*

The other items of the section include similar text pertaining to other documents such as "Safety Policy Service" and "Safety Training." *Id.* Next to each item, the document states "Yes." *Id.*

The Esign/Acknowledgement section states

> ELECTRONIC SIGNATURE: Please type your name as it is listed on your employment application:
>
> AUTHORIZATION AND UNDERSTANDING: I certify that I have reviewed and acknowledged the required documentation.
>
> I testify that this statement is true to the best of my knowledge.

> *After you have electronically signed your Onboarding forms, please check your email for instructions to complete your required Tax Forms.*

*Id.* Below this, the section reflects "Derek Allen Zink Accepted." *Id.*

Belle Tire stopped using the 2021 version of the employee handbook and the acknowledgment form in July 2025. ECF No. 7, PageID.48; ECF No. 7-2, PageID.72; ECF No. 10, PageID.102. As Zink highlights, ECF No. 10, PageID.115, Belle Tire did not attach to its motion any versions of the employee handbook and the acknowledgment form post–July 2025.

**2. 2025 Alternative Dispute Resolution Agreement**

In July 2025, Belle Tire began "proposing a standalone arbitration agreement to all of its employees." ECF No. 7-2, PageID.72; *see* ECF No. 7, PageID.50; ECF No. 10, PageID.102. That agreement was distributed to employees via a Belle Tire electronic portal called "Belle Tire Academy," which employees would access for personnel and training purposes.

That agreement—labelled the "Alternative Dispute Resolution Agreement"—opens with an acknowledgment stating:

> I acknowledge that I have received, read, and understand the contents of this document. I understand that it is my responsibility to comply with the guidelines and policies contained herein. I understand that this document does not constitute a contract of employment and that the company reserves the right to amend or revise the content at any time.

ECF No. 7-5, PageID.80. Then, the Alternative Dispute Resolution Agreement states "[f]or valuable consideration, including employment and continued employment, the employee signed below ('Employee') and Belle Tire [(the 'Company')]… agree as follows." *Id.*

Section 1 provides that

> Except as stated in Section 2 below, this Agreement contains the sole method for resolving any and all disputes between Employee and the Company relating to Employee's employment or the end of that employment.
>
> …
>
> *Employee acknowledges and agrees that Employee is waiving the right to adjudicate any claim arising under this Agreement before any federal or state court.* This Agreement applies to all claims whether brought during Employee's employment with the Company or any time thereafter.

*Id.* Section 2 excludes certain claims from its scope. *Id.* Zink does not argue that Section 2 applies to exclude the current lawsuit from the scope of the Alternative Dispute Resolution Agreement. ECF No. 10.

Section 3 provides that the parties to the agreement "must first attempt to resolve the dispute through mediation." *Id.* Further, "[i]f the pre-arbitration mediation is unsuccessful, all claims covered by this Agreement must be submitted to final and binding arbitration before a neutral arbitrator mutually selected by the parties." *Id.*

Section 7 states that "[a]ll Covered Claims (including all claims arising both before and after the date Employee signs this Agreement)

must be pursued on an *individual basis only*. Employee waives any right to commence, or be a party to, any class, representative or collective claims or action." *Id.* The section closes with a line for the employee's initials, preceded by the statement: "By initialing here, Employee acknowledges Employee has read this paragraph and agrees with the individual action requirement herein." *Id.* at PageID.80–81

Section 8 covers the period in which claims may be brought and similarly closes with a line for the employee's initials, preceded by the statement: "By initialing here, Employee acknowledges Employee has read this paragraph and agrees with the claims period." *Id.* at PageID.81.

Section 12 provides that it would be interpreted under Michigan law. *Id.*

Section 14 states that "EMPLOYEE ACKNOWLEDGES AND AGREES THAT EMPLOYEE HAS REVIEWED AND ENTERED INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY. THIS AGREEMENT CAN ONLY BE CHANGED OR REVOKED BY A WRITTEN AGREEMENT SIGNED BY BOTH EMPLOYEE AND THE PRESIDENT OF THE COMPANY." *Id.*

The document finishes with a signature block for the Employee and for the Company. *Id.*

It is undisputed that the copy of the Alternative Dispute Resolution Agreement submitted by Belle Tire bears no initials on paragraphs 7 and

8 and no signature in the employee signature block. ECF No. 7-5; ECF No. 10, PageID.105; ECF No. 11, PageID.129.

The Alternative Dispute Resolution Agreement was distributed to employees through an electronic portal called "Belle Tire Academy," utilized by Belle Tire to distribute certain documents to employees. ECF No. 7, PageID.50; ECF No. 10, PageID.105–106. Each employee accesses their Belle Tire Academy account using unique login credentials and a confidential password. ECF No. 7, PageID.50; ECF No. 10, PageID.106.

Belle Tire also produced an internal document titled "Employee Acknowledgements." ECF No. 7-7. That document "explains the process of obtaining employee acknowledgements for documents in Belle Tire Academy." *Id.* at PageID.87. According to the Employee Acknowledgements policy, an employee must open a document and "scroll to the end of the document to receive a completion record for that document." *Id.* at PageID.90. Employee Acknowledgements also includes a screenshot titled "Employee View of Completion Record in Belle Tire Academy." *Id.* That screenshot shows that upon completing a document, a green checkmark and the word "Completed" are generated by the Belle Tire Academy online portal next to the document that has been reviewed and approved. *Id.*

To show that Zink accepted the Alternative Dispute Resolution Agreement, Belle Tire submits two records generated by the Belle Tire Academy platform: Plaintiff Zink's employee dashboard on Belle Tire

Academy and a separate "Course Training Status Report." ECF No. 7-6. Zink's Belle Tire Academy employee dashboard lists an item titled "Arbitration Agreement." *Id.* at PageID.83. That item is marked complete on August 12, 2025 with a "Total time" of 0:08:32. *Id.* The separate "Course Training Status Report" lists "Arbitration Agreement" as a "Course" that was "Completed" on August 12, 2025. *Id.* at PageID.85.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As such, the FAA requires federal courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Under Section 3 of the FAA, and upon finding that an issue is referable to arbitration pursuant to a written agreement, a federal court must, "on application of one of the parties," stay proceedings until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 474 (2024). And under Section 4 of the FAA, when one of the parties to the arbitration agreement fails or refuses to arbitrate, the party seeking to compel arbitration may petition a federal court for an order directing that such arbitration proceed in the manner provided in the agreement. 9 U.S.C. §

4 (providing that the "hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed").

Before courts can refer a dispute to arbitration, they must decide multiple "gateway" questions of "arbitrability." *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Courts must first determine: (1) whether the parties agreed to arbitrate, (2) the scope of that agreement, (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable, and (4) if only some, but not all, of the claims are arbitrable, whether to stay the remainder of the proceedings pending arbitration. *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing to *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

Courts reviewing motions to compel arbitration under the FAA apply the same standards as Federal Rule of Civil Procedure 56 sets out for motions for summary judgment. *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 838 (6th Cir. 2021). The party seeking arbitration, "as the movant asserting the existence of a contract, must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021). Once that burden is carried, the opposing party must "cite to particular materials in the record to show that there is a genuine dispute of material fact that could lead a rational trier of fact to find that a contract does not exist."

*Id.* at 882 (cleaned up). "If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). As it does in considering a motion for summary judgment, the court reviews factual conflicts "in the light most favorable to the opposing party." *Boykin*, 3 F.4th at 840 (*citing Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014)).

If the Court finds that the formation of the arbitration agreement is "in issue," the Federal Arbitration Act requires the Court to proceed to a summary trial to resolve the question. *Great Earth Companies, Inc.*, 288 F.3d at 889 (*citing* 9 U.S.C. § 4). Such a proceeding may be held before the Court, or before a jury if demanded by the party alleged to be in default (in this case, Zink, the party claiming not to be bound to arbitrate). *See* 9 U.S.C. § 4.

## III. DISCUSSION

Belle Tire moves to compel arbitration, arguing that "[d]uring his employment, Mr. Zink entered into two agreements with Belle Tire, one in 2023 and one in 2025, to arbitrate any and all disputes arising out of or relating to his employment." ECF No. 7, PageID.46. Belle Tire relies primarily on the 2025 Alternative Dispute Resolution Agreement, and alternatively on the arbitration clause in the 2021 Handbook Acknowledgement Document. *Id.* at PageID.56–65.

Zink argues that he did not assent to the 2025 Alternative Dispute Resolution Agreement and that the arbitration clause in the 2021 Handbook Acknowledgement Document is not a valid contract. ECF No. 10, PageID.104–121. Accordingly, the Court must first determine whether the parties have validly agreed to arbitrate. *Fazio*, 340 F.3d at 392.

Courts "apply ordinary state-law principles that govern the formation of contracts." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 881 (citation omitted). Here, the parties cite to Michigan law. *See*, *e.g.*, ECF No. 7, PageID.56; ECF No. 10, PageID.110. "Because the parties agree Michigan law applies, we apply Michigan contract law." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 881 n.4.

"Under Michigan law, a valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id.* at 881 (cleaned up).

The Court addresses each purported agreement in turn.

**1. 2025 Alternative Dispute Resolution Agreement**

Belle Tire contends that

> On August 12, 2025, Plaintiff electronically signed the 2025 Arbitration Agreement through his Belle Tire Academy portal. (Ex. A ¶¶ 22; Ex. E at 1, 3). To electronically sign the Arbitration Agreement, Plaintiff was required to log into the "Belle Tire Academy" portal through a unique username and

> password. (Ex. A ¶ 17). Belle Tire does not provide employee's profile access or password to anyone else. (Ex. A ¶ 8).
>
> The Belle Tire Academy portal produces a confirmation after employees have reviewed and/or accepted the terms of the Arbitration Agreement. (Ex. A ¶ 10). The confirmation document, attached as Ex. E, is a true and accurate representation of Plaintiff's Belle Tire Academy record. (*Id*). The checkmark next to "Arbitration Agreement," and the corresponding date of August 12, 2025, along with the "completion" notation, confirms that Plaintiff accepted the terms of the Agreement on that date. (Ex. A ¶¶ 10, 21-22; Ex. E at 1). This is also reflected on Mr. Zink's course training status report, which shows that the Arbitration Agreement was 100% completed on August, 12, 2025. (Ex. A ¶ 22; Ex. E at 3).

ECF No. 7, PageID.51–52.

Zink contests that he entered into the 2025 Alternative Dispute Resolution Agreement. ECF No. 10, PageID.104–13. Specifically, Zink argues that "Belle Tire's 2025 arbitration agreement uses disclaimer language showing a revocable policy, not a bilateral contract, so the required 'meeting of the minds' is absent," *id.* at PageID.109; and that the 2025 Agreement prescribes signature and initials as the manner of acceptance, and Belle Tire produced no such executed agreement, *id.* at PageID.109–113.

For the reasons discussed in some detail below, the Court concludes that Belle Tire has not carried its initial burden of producing evidence that would allow a reasonable jury to find that a contract exists based on the 2025 Arbitration Agreement.

Zink's "lack-of-assent argument pertains to the fourth element (mutuality of agreement), which requires 'an offer and acceptance.'" *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 881.

> That is, there must be 'mutual assent'—i.e., a meeting of the minds' on all the essential elements of the agreement. Whether there was a meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.

*Id.* "Acceptance must be unambiguous and in strict conformance with the offer." *Eerdmans v. Maki*, 226 Mich. App. 360, 364 (1997) (citation omitted); *accord Pakideh v. Franklin Com. Mortg. Grp., Inc.*, 213 Mich. App. 636, 640 (1995).

Belle Tire argues that the record shows that Zink assented to arbitration. ECF No. 11, PageID.131. Specifically, Belle Tire points to two records generated by Belle Tire Academy: Zink's employee dashboard on Belle Tire Academy and a separate "Course Training Status Report." *Id.*; ECF No. 7-6. These records reflect that Zink "Completed" a document titled "Arbitration Agreement." ECF No. 7-6, PageID.83, 85. Belle Tire characterizes the act of "completing" a document as "accept[ing]" the terms of the document and as an "electronic signature." ECF No. 7, PageID.57.

However, Belle Tire's own evidence undercuts that characterization. According to its internal Employee Acknowledgements document, an employee receives a completion record on Belle Tire

Academy by "open[ing] the document" and "scroll[ing] to the end of the document." ECF No. 7-7, PageID.90. This process requires no expression of acceptance of the document's terms and, in fact, the record would be generated *every time* an employee scrolls to the end of the document. Accordingly, this process does not constitute unambiguous acceptance of the offer, as required under Michigan law. *Pakideh*, 213 Mich. App. at 640.

Belle Tire's argument that "[e]lectronic signatures are valid under both federal law, 15 U.S.C. § 7001, and Michigan law, M.C.L. 450.831 *et seq*." ECF No. 7, PageID.57, does not change this outcome. The question is not whether Zink *could* have accepted the Alternative Dispute Resolution Agreement electronically—electronic signatures are plainly valid under Michigan law, *see* M.C.L. 450.831 *et seq.*—but whether Belle Tire has produced evidence that he in fact accepted the agreement at all. It has not.[2]

[2] Michigan law defines electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." M.C.L. 450.832(h). The conduct Belle Tire's own records reflect—opening a document and scrolling to its end—is not a sound, symbol, or process adopted by a person with the intent to sign the record. Beth Kilpatrick's, Belle Tire's Chief People Officer, conclusory assertion that "[w]hen employees electronically sign a document, that document shows as a 'completion' on the employee's Belle Tire Academy 'control panel' page," ECF No. 7-2, PageID.71, does not change what constitutes, or does not constitute, an electronic signature.

Additionally—contrary to Belle Tire's argument, *see* ECF No. 7, PageID.58—the fact that Zink accessed the document by signing into the Belle Tire Academy using a unique profile and password does not somehow turn the act of opening a document and scrolling to its end into assent to the document's terms. While that conduct bears on the question of whether an "electronic signature [would be] attributable to [Zink]," *Anderson v. Crothall Healthcare Inc.*, No. 21-10535, 2022 WL 3719834, at *4 (E.D. Mich. Aug. 29, 2022) (Berg, J.), it does not bear on the question of whether the document has been electronically accepted in the first place.

Another problem for Belle Tire is that the Alternative Dispute Resolution Agreement prescribes a different method of acceptance: signature and initials. ECF No. 7-5. It provides initial lines for Sections 7 and 8 and closes with a signature block calling for the employee's signature, printed name, and the date. *Id.* at PageID.80–81. Consistent with those requirements, the document's opening recital states that it is entered into by "the employee signed below." *Id.* at PageID.80. Nor does Belle Tire's employee portal present a different method of signing or otherwise accepting the terms of the Alternative Dispute Resolution Agreement.

The specificity of these requirements "compel[s] a finding that [Belle Tire] intended those requirements to be the exclusive means of accepting the offer." *Pakideh*, 213 Mich. App. at 640. In other words,

when, as here, an offer requires a specific form of acceptance, such acceptance must be "in strict conformance with the offer." *Id.* (rejecting the notion "that a required method of acceptance cannot be exclusive unless it is explicitly labeled as such"). Otherwise, "no contract is formed." *Id.*

Here, although the Alternative Dispute Resolution Agreement prescribes acceptance by initialing two sections and by providing a signature, a printed name, and a date at the bottom of the document, the copy of the document provided by Belle Tire bears no initials and no signature. ECF No. 7-5. Because acceptance did not conform to the manner Belle Tire prescribed, "no contract is formed." *Pakideh*, 213 Mich. App. at 640.

Thus, the Court concludes that Belle Tire has not carried its initial burden of producing evidence that would allow a reasonable jury to find that Zink has accepted the Alternative Dispute Resolution Agreement. Accordingly, the Court will not compel arbitration pursuant to the terms of the Alternative Dispute Resolution Agreement.

Because Belle Tire has not made its prima facie showing that an agreement to arbitrate existed, the burden never shifted to Zink to show a genuine issue of material fact; accordingly, there is no factual dispute for a 9 U.S.C. § 4 trial to resolve regarding the application of the Alternative Dispute Resolution Agreement. *See Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) ("a party seeking to invoke FAA §

4 must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue'").

**2. 2021 Handbook Acknowledgement Document**

Belle Tire argues that Zink entered into the 2021 Handbook Acknowledgement Document on May 18, 2023. ECF No. 7, PageID.49. Zink responds that this document is not a binding contract because (1) it "operated as a revocable policy instrument of Defendant rather than an independent agreement supported by clear mutual assent"; (2) its arbitration provision lacks the objective manifestation of mutual assent that contract formation requires; and (3) it was rescinded or superseded by Belle Tire's July 2025 handbook. ECF No. 10, PageID.113–20.

As described above, "[u]nder Michigan law, a valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 881 (cleaned up).

Zink does not dispute that Belle Tire and he are competent parties capable of entering into a contract or that employment compensation claims may be resolved through private arbitration agreements. *See* ECF No. 10, PageID.113–20. Instead, Zink's first and second arguments challenge that the 2021 Handbook Acknowledgement Document is a valid contract under elements (3)–(5). Zink's third argument—that the

2021 Handbook Acknowledgement Document was rescinded or superseded by Belle Tire's July 2025 handbook—does not challenge that the parties entered into a valid contract through the 2021 Handbook Acknowledgement Document, but rather that contract should be unmade. *See Thrash v. Countrywide Com. Real Est. Fin., Inc.*, 405 F. App'x 816, 820 (5th Cir. 2010) ("rescission presupposes the existence of a valid contract"); *cf. Ridgway v. Stratton*, No. 363574, 2024 WL 3280328, at *5 (Mich. Ct. App. July 2, 2024) ("Rescission of a contract is defined as the annulling, abrogating, or unmaking of a contract." (citation omitted)).

Accordingly, the Court will first address Zink's arguments challenging contract formation.

*a. Element 4: Mutuality of Agreement*

The Court begins with Zink's argument that the 2021 Handbook Acknowledgement Document did not provide reasonable notice or a clear manifestation of assent to arbitrate. ECF No. 10, PageID.118. As described above, "lack-of-assent argument[s] pertain[] to the fourth element (mutuality of agreement), which requires 'an offer and acceptance.'" *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 881.

Zink does not dispute that during his onboarding process, he was provided with a copy of the 2021 Handbook Acknowledgement Document. ECF No. 7-4, PageID.78; ECF No. 7, PageID.49; ECF No. 7-2, PageID.71.

Nor does Zink dispute that he checked a box on his onboarding form, generating a "Yes" designation, upon being prompted "By checking the box, I acknowledge that I have reviewed the Belle Tire 2021 Handbook and Handbook Acknowledgement Document and I accept the terms of the Handbook Acknowledgement Document." ECF No. 7-4, PageID.78. Lastly, Zink does not dispute that he typed in his name at the bottom of the onboarding form to "certify" that he "reviewed and acknowledged the required documentation." *Id.*

Under Michigan law, this conduct—checking a box after being prompted to check the box to "accept the terms of the Handbook Acknowledgement Document," and typing his name at the bottom of the form, ECF No. 7-4, PageID.78—constitutes an electronic signature, *see* M.C.L. 450.832(h).

Zink does not dispute these underlying acts. ECF No. 10-1. Instead, Zink disputes only the legal effect of those acts. *Id.* at PageID.126 ("I have never executed or been provided with any signed arbitration agreement bearing my initials or signature.").[3] Specifically, Zink argues that when

---

[3] Standing alone, that statement might be read as a factual denial. However, Zink's declaration does not directly dispute whether the specific documented conduct—checking a box and typing the name—actually occurred. *see* ECF No. 10-1, PageID.125–26. Additionally, Zink's brief does not present this statement as creating a factual dispute. ECF No. 10. Instead, it argues only that the documented acts did not, as a matter of law, form a binding agreement to arbitrate. Accordingly, Zink's statement disputes the legal effect of his conduct, not whether it

> the employer frames the document as a handbook or policy and reserves unilateral control, courts treat the document as non-contractual absent clear evidence that the arbitration provision stands alone as an agreement. Courts decline to compel arbitration where the employer relies on generalized handbook acknowledgments and the employee disputes agreement.

ECF No. 10, PageID.118 (citing *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411 (6th Cir. 2011), *Heurtebise v. Reliable Bus. Computers*, 452 Mich. 405 (1996), *Stewart v. Fairlane Cmty. Mental Health Ctr.*, 225 Mich. App. 410 (1997), and *Boykin*, 3 F.4th 832 (6th Cir. 2021)). Accordingly, Zink argues, "[t]he Court should at most treat Belle Tire's onboarding evidence as proof of receipt of policies, not proof of acceptance of a bilateral arbitration contract." *Id.* at PageID.119.

Zink contends that "Michigan courts recognize that a stand-alone arbitration agreement can be enforceable even when an employee handbook is not, but only when the arbitration agreement is presented as an independent contract and supported by evidence of mutual assent." ECF No. 10, PageID.118. But here, the situation is different because

> Belle Tire's 2021 handbook acknowledgment form is not presented that way. It is styled as an "ACKNOWLEDGEMENT" of a handbook, with arbitration language embedded among handbook policy disclaimers, and Belle Tire's onboarding screen does not alert the employee that arbitration rights are being waived. (ECF No. 7-3, PageID.74–75; ECF No. 7-4, PageID.78.) Belle Tire's 2021

---

happened. Therefore, it presents a question of law rather than a triable issue of fact.

> handbook acknowledgement form begins by acknowledging review of an employee handbook. (ECF No. 7-3, PageID.74.) Arbitration appears as one paragraph among other statements and policies in the separate acknowledgment located in a separate hyperlink from the policy manual but part of a single acknowledgment checkmark. (Id. at PageID.74–75.)

*Id.* at PageID.118–19.

A careful review of the relevant documents shows that Zink's position is incorrect.

While the 2021 Handbook Acknowledgement Document does "acknowledge review of the Employee Handbook … of Belle Tire," it also contains a separate section titled "Agreement to Arbitrate Disputes." ECF No. 7-3, PageID.75. Thus, while the document includes a "generalized handbook acknowledgment," ECF No. 10, PageID.118, it *also* includes a *specific* arbitration agreement which Zink "accept[ed]" when he checked the box. ECF No. 7-4, PageID.78. Thus, the Court concludes that Zink accepted the arbitration agreement.

The caselaw relied upon by Zink is inapposite to these circumstances.

For instance, in *Hergenreder*, the Sixth Circuit addressed following circumstance: an employee had "signed an acknowledgment that she had read and understood the terms of" the employer's employee handbook. *Hergenreder*, 656 F.3d at 414. The employee *handbook* included a section

stating that it was "intended as a summary only and [was] not a contract." *Id.* The handbook also specified that,

> This handbook has been provided to you for the purpose of acquainting you with the personnel policies and procedures, responsibilities of Bickford Cottage. It does not constitute a contract of employment in whole or in part. Bickford Cottage may add to, change or delete any of the contents at any time with no notice.

*Id.* The handbook contained another section which provided, in full: "*Dispute Resolution Process* Please refer to the Eby Companies Dispute Resolution Procedure (DRP) for details." *Id.* The DRP referenced that the employee was "being asked to sign a written agreement to the Dispute Resolution Procedure." *Id.*

Based on these facts, the Sixth Circuit concluded that

> There was neither an offer nor an acceptance. The objective signs that [the employer] made [the employee] an offer to be part of the arbitration agreement are few in number. The best [the employer] can say is that [the employee] was informed that, for "Employee Actions," she should "refer" to the DRP. … [The employee] was not *required* to refer to the DRP. … Moreover, the simple reference in the Handbook to "the Eby Companies Dispute Resolution Procedure" for "details" is *not* "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." This statement says nothing about arbitration, and it says nothing that would indicate to [the employee] that accepting or continuing her job with [the employer] would constitute acceptance. … Were [the employee] required to read, or even notified of the importance of reading, the DRP, the analysis here might be different.

*Id.* at 418 (citation omitted). Thus, in *Hergenreder,* the language in the handbook clearly did not suggest the formation of a contract, it provided information about an arbitration process—it did not request assent to that process.

Similarly, in *Stewart*, the employee signed a document entitled "'Acknowledgement of Receipt of the Centre's Personnel Policies' acknowledging her receipt of the new policy manual containing the arbitration agreement." *Stewart*, 225 Mich. App. at 413. This document "did not contain language mentioning the new arbitration policy or indicating whether she agreed to the binding arbitration provision." *Id.* Additionally, the document contained a disclaimer clarifying that it was "*neither an 'employment agreement' nor a 'contract of employment.'* It is a *guide*." *Id.* Lastly, the document "noted that the personnel policies may be amended from time to time." *Id.* at 420. Based on these facts, the Michigan Court of Appeals found the acknowledgment form was not a binding contract to arbitrate. *Id.*

Next, in *Heurtebise*, the employee signed an acknowledgment, acknowledging receipt of a handbook which explicitly noted that the policies specified within the handbook did "*not create any employment or personal contract*"; and reserved the employer's right to "make modifications to any or all of the Policies herein, at its sole discretion, and as future conditions may warrant." *Heurtebise*, 452 Mich. at 414. On these facts, the Supreme Court of Michigan held "that the handbook has

not created an enforceable arbitration agreement with respect to this dispute." *Id.*

Thus, in *Hergenreder* and *Stewart*, the employee signed a document acknowledging receipt of a handbook which specified it was not an employment contract; reserved the right for the employer to unilaterally change the policies of the handbook; and did not itself contain an arbitration clause. In *Heurtebise*, while the underlying handbook contained an arbitration clause, the handbook specified it was not an employment contract and reserved the right for the employer to unilaterally change the policies of the handbook.

Unlike the circumstances addressed in this caselaw, here, the undisputed record shows that Zink "accept[ed] the terms" of a document which contained not only a section acknowledging receipt of the employer handbook but also a separate clearly articulated arbitration agreement clause. ECF No. 7-3, PageID.75. That arbitration agreement clause contained specific language clarifying that it was binding upon the parties ("I agree," "This Agreement shall be binding"). *Id.*

In other words, unlike the acknowledgment forms in the cases relied upon by Zink, which merely invited the employee to acknowledge receipt of a handbook which itself (in some circumstances) contained an arbitration provision, the 2021 Handbook Acknowledgement Document before the Court invites the employee to enter into a binding agreement to arbitrate in no uncertain terms.

Zink also argues that "Belle Tire's onboarding screen does not alert the employee that arbitration rights are being waived," thus defeating the requirement of acceptance. ECF No. 10, PageID.119.

The Court disagrees. The 2021 Handbook Acknowledgement Document contains a clear and discrete "Agreement to Arbitrate Disputes" in which the employee clearly "waiv[es] [their] right to adjudicate … claims in a judicial forum, courtroom or administrative agency and opting, instead, to arbitrate." ECF No. 7-3, PageID.75. That Belle Tire's onboarding screen did not separately flag this waiver does not defeat acceptance: it was Zink's "duty to 'read' the contract," *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 882, and Zink "certif[ied]" and "acknowledge[d] that he "reviewed" and "accepted" the terms of the 2021 Handbook Acknowledgement Document. ECF No. 7-4, PageID.78.

Accordingly, given that the undisputed facts show that Zink assented to the 2021 Handbook Acknowledgement Document, the Court concludes that the fourth element necessary to form a binding contract is met.

*b. Elements 3 and 5: Legal Consideration and Mutuality of Obligation*

Zink's next argument—that the 2021 Handbook Acknowledgement Document operated as a revocable policy instrument—challenges the third and fifth elements of contract formation: legal consideration and

mutuality of obligation. These elements are frequently analyzed together: "By 'mutuality of obligation' is … meant that there must be consideration, without which there is no obligation on either party because there is no binding contract." *Hall v. Small*, 267 Mich. App. 330, 334 (2005); *cf. Frazier Indus., L.L.C. v. Gen. Fasteners Co.*, 137 F. App'x 723, 730 (6th Cir. 2005) ("Over the years, the 'mutuality of obligation' element in contract formation theory has been eliminated by the logical recognition that not all contracts require that element to be valid.").

The provision of employment is sufficient consideration to validate a contract in an at-will employment setting. *Cf. Solomon v. CARite Corp. LLC*, 837 F. App'x 355, 362 (6th Cir. 2020) ("In Michigan, continued employment is sufficient consideration to validate a contract in an at-will employment setting."); *Ryoti v. Paine, Webber, Jackson & Curtis, Inc.*, 142 Mich. App. 805, 812 (1985) ("The fact that he did not sign the arbitration agreement until two weeks after he began working for defendant does not show a failure of consideration.").

The 2021 Handbook Acknowledgement Document, presented to Zink during his onboarding, clarifies that the "employment relationship between" Belle Tire and Zink "is terminable at-will by either party at any time, with or without prior notice and with or without cause." ECF No. 7-3, PageID.75. Belle Tire "required employees to review … and accept[]the terms of" the 2021 Handbook Acknowledgement Document. ECF No. 7-2, PageID.72. Additionally, during the August 10, 2026

hearing, Belle Tire's counsel affirmed that Zink's employment at Belle Tire was conditioned on his acceptance of the 2021 Handbook Acknowledgement Document.

Zink does not dispute these facts. Instead, Zink argues that "the 2021 materials" could be unilaterally revised. ECF No. 10, PageID.117. Specifically, Zink argues that "the 2021 materials"

> operated as a revocable policy instrument of Defendant rather than an independent agreement supported by clear mutual assent. Where an employer unilaterally revises the asserted "contractual" terms at its convenience, there was no agreement in the first instance as the promise was "illusory and unenforceable."

*Id.* (citing *Teschendorf v. RIIS, LLC*, No. 17-13967, 2018 WL 1858185, at *1 (E.D. Mich. Apr. 18, 2018)). Similarly, Zink argues that courts have denied motions to compel arbitration when the employer relied on an acknowledgment form tied to an employee manual that *could be modified*. ECF No. 10, PageID.118—119 (citing *Heurtebise*, 452 Mich. 405 (1996), *Stewart*, 225 Mich. App. 410 (1997), and *Kaczanowski v. Driven Grow, LLC*, No. 23-12888, 2024 WL 3893479, at *4 (E.D. Mich. Aug. 20, 2024) (Ludington, J.)).

When one party can unilaterally change a contractual term at will, that term imposes no binding obligation on that party and can therefore not serve as consideration. *See Teschendorf*, 2018 WL 1858185, at *2 (Cohn, J.) ("because the Handbook provides that the Company policies

may be unilaterally changed by the Company at any time, [the employer's] promise is illusory and unenforceable"); *cf. Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000) (A promise fails to create legally binding obligation "when a promisor retains the right to decide whether or not to perform the promised act.").

Accordingly, courts have held that when an employee signed a document acknowledging receipt of a handbook which reserved the employer's right to unilaterally change the policies of the handbook, the employee was not bound by an arbitration agreement contained within the handbook. *See Heurtebise*, 452 Mich. at 414; *Teschendorf*, 2018 WL 1858185, at *2.

But the circumstances the Court faces here are distinguishable from those described in the above cases. While the 2021 Handbook Acknowledgement Document acknowledges that "the information, policies, procedures and benefits *described in the Handbook are subject to change*," it expressly excepts arbitration from that reservation. ECF No. 7-3, PageID.75 (emphasis added). By its terms, the right to unilaterally change policies applies "[e]xcept for the Company's policies regarding employment-at-will, limitations of action and the *agreement to arbitrate disputes*." *Id.* (emphasis added).

Thus, unlike the cases Zink relies on—where the employer reserved the right to unilaterally change the very terms containing the arbitration

provision—Belle Tire retained no such power over its agreement to arbitrate with Zink.

Accordingly, the Court concludes that the undisputed facts show that the 2021 Handbook Acknowledgement Document is supported by consideration. Therefore, the third and fifth elements necessary to form a binding contract are met.

Thus, because the undisputed facts show that all five elements necessary to form a binding contract under Michigan law are established, the Court concludes that Belle Tire and Zink entered into the 2021 Handbook Acknowledgement Document.

The Court next addresses Zink's last argument—that the 2021 Handbook Acknowledgement Document was rescinded or superseded by the July 2025 handbook.

*c. Whether the 2021 Handbook Acknowledgement Document was rescinded or superseded*

Zink argues that the 2021 Handbook Acknowledgement Document was rescinded or superseded when Belle Tire discontinued it and rolled out new handbook materials in July 2025. ECF No. 10, PageID.113–18. Zink advances two theories of rescission: mutual rescission inferred from the parties' conduct, and rescission by a superseding agreement covering the same subject matter. Neither succeeds.

First, Zink argues that mutual rescission resulted from the parties' course of conduct. *See*, *e.g.*, *id*. at PageID.113.

Mutual rescission of a contract "may be inferred from the conduct of the parties clearly evidencing their intention to treat the contract as at an end." *Young v. Rice*, 234 Mich. 697, 701 (1926). "Without any explicit agreement for the abrogation of a contract, it may be effectually rescinded by the actions of the parties where they mutually abandon all further performance under it, and treat it as at an end, neither seeking to hold the other to any accountability under it." *Id.* at 701. Further,

> The rescission of a contract by mutual consent does not require a formal agreement or release, but may result from any act or any course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated or terminated, or from the acquiescence of one party in its explicit repudiation by the other.

*Kundel v. Portz*, 301 Mich. 195, 208 (1942). Nevertheless, "a mutual rescission requires mutual intent." *Bradley v. Westfield Ins. Co.*, No. 365828, 2024 WL 3380920, at *7 (Mich. Ct. App. July 11, 2024), *appeal denied,* 36 N.W.3d 312 (Mich. 2026); *see Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 373 (2003) ("one cannot unilaterally modify a contract because by definition, a unilateral modification lacks mutuality").

Zink argues that Belle Tire's "July 2025 rollout of new handbook and acknowledgment form that omitted arbitration" terminated the 2021 Handbook Acknowledgement Document. ECF No. 10, PageID.114. In other words, Zink points to the rollout of the new handbook and

acknowledgment form as the course of conduct "clearly showing that both parties intended to treat a contract as at an end." *Id.* at PageID.115.

As Zink recognizes, *see id.* at PageID.114, the problem with this position is that rescission by mutual conduct requires evidence of *mutual* intent to rescind the contract. *See Bradley*, 2024 WL 3380920, at *7. Thus, even accepting Zink's claim that Belle Tire's rollout of the new acknowledgment form indicates Belle Tire's intent to rescind the contract, Zink points to no corresponding act, or acquiescence to Belle Tire's purported repudiation, on his part. This fact alone forecloses Zink's mutual-rescission theory. If Zink seeks to point to his conduct in reviewing the new acknowledgment form through the Belle Tire portal as proof that he assented to repudiate the 2021 arbitration agreement, such a position would seem to contradict his position that he did not agree to the 2025 arbitration agreement by interacting with the portal.

Accordingly, the undisputed facts do not establish that the parties, by their mutual course of conduct, have indicated a mutual understanding that the 2021 Handbook Acknowledgement Document has been rescinded.

Second, Zink argues that the 2021 Handbook Acknowledgement Document has been superseded by the July 2025 handbook and acknowledgment form that omitted arbitration. ECF No. 10, PageID.114.

The Court disagrees.

"Under Michigan law, entering a superseding, inconsistent agreement covering the same subject matter rescinds an earlier contract and operates as a waiver of any claim for breach of the earlier contract not expressly reserved." *Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp.*, 749 F. Supp. 794, 796 (E.D. Mich. 1990) (Cohn, J.). As the Supreme Court of Michigan has explained,

> [A] party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract. This principle follows from the contract formation requirement that is elementary to the exercise of one's freedom to contract: mutual assent.
>
> Where mutual assent does not exist, a contract does not exist. Accordingly, where there is no mutual agreement to enter into a new contract modifying a previous contract, there is no new contract and, thus, no modification. Simply put, one cannot unilaterally modify a contract because by definition, a unilateral modification lacks mutuality.
>
> The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract. In meeting this clear and convincing burden, a party advancing amendment must establish that the parties mutually intended to modify the *particular* original contract, including its restrictive amendment clauses such as written modification or anti-waiver clauses.
>
> Upon proof of an express oral or written agreement, the mutuality requirement is clearly satisfied. This is because where the parties expressly modify their previous contract, rescission of the terms of the prior agreement is a necessary implication.

*Quality Prods. & Concepts Co.*, 469 Mich. at 372–73.

Here, as Zink himself argues, *see*, *e.g.*, ECF No. 10, PageID.109, the parties have not entered into the 2025 Alternative Dispute Resolution Agreement. However, without a "superseding, inconsistent agreement covering the same subject matter," *Kelsey-Hayes Co.*, 749 F. Supp. at 796, the 2021 Handbook Acknowledgement Document cannot have been superseded. *Cf. Quality Prods. & Concepts Co.*, 469 Mich. at 372–73 ("where there is no mutual agreement to enter into a new contract modifying a previous contract, there is no new contract and, thus, no modification").

Similarly, Zink also argues

> Related employee handbook law points in the same direction. Michigan recognizes that employer policies and handbook terms can change with reasonable notice, and continued employment after notice can supply assent to the new policy. Belle Tire provided new handbook and handbook acknowledgment materials that omit arbitration, and Plaintiff continued employment thereafter.

ECF No. 10, PageID.116–17 (citing *Hergenreder*, 656 F.3d 411 (6th Cir. 2011) and *In re Certified Question*, 443 N.W.2d 112 (1989)).

Indeed, under Michigan law, an employer may *unilaterally* change its written policy provided that the employer gives affected employees reasonable notice of the policy change. *Cf. In re Certified Question*, 432 Mich. at 441. However, this holding is limited to written personnel policies and does *not* extend to contracts:

> an employer who chooses to establish desirable personnel policies … is not seeking to induce each individual employee to show up for work day after day, but rather is seeking to promote an environment conducive to collective productivity. The benefit to the employer of promoting such an environment, rather than *the traditional contract-forming mechanisms of mutual assent or individual detrimental reliance*, gives rise to a situation "instinct with an obligation."

*Id.* at 454 (emphasis added). This is because the "very definition of 'policy' negates a legitimate expectation of permanence" whereas "contractual obligation" are "perpetually binding." *Id.* at 455–56.

However, as the Court has already explained, the 2021 Handbook Acknowledgement Document is not a written personnel policy but a free-standing agreement between the parties. Such an agreement cannot be unilaterally changed simply through the issuance of a new employee handbook.

Accordingly, the undisputed facts show that the 2021 Handbook Acknowledgement Document has not been superseded by a subsequent agreement.

The Court therefore holds the terms of the 2021 Handbook Acknowledgement Document validly bind the parties. Because the Court concludes that the formation of the arbitration agreement is not "in issue" and the Court need not proceed to a summary trial to resolve this question. *See Great Earth Companies, Inc.*, 288 F.3d at 889.

*d. Remaining gateway questions*

Having determined that the parties have agreed to arbitrate, the Court must next determine the scope of the agreement, whether Congress intended the federal statutory claims to be nonarbitrable, and, lastly, whether to stay the remainder of the proceedings pending arbitration. *Fazio*, 340 F.3d at 392. Zink's motion does not address these remaining gateway questions.

First, the Court must determine whether this "issue is within the scope of an arbitration agreement." *Id.* at 395. "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Id.*

Under the 2021 Handbook Acknowledgement Document, Zink agrees that if he has

> any dispute with [Belle Tire] or any of its officers, agents or employees (past, current or future) concerning my employment or the termination of employment (including, but not limited to, any allegation for wages, benefits, breach of contract, discrimination, harassment or retaliation) such dispute shall be submitted to arbitration administered by the American Arbitration Association under its Employment Arbitration Rules.

ECF No. 7-3, PageID.75.

In the operative complaint, Zink alleges that Belle Tire failed to pay overtime wages to Zink and similarly situated employees and reduced

their pay rate without the required advance notice. ECF No. 1. These claims plainly fall within the scope of the arbitration agreement.

Second, the Court must determine whether Congress intended claims arising under the Fair Labor Standards Act—the only basis for Zink's federal statutory claims—to be nonarbitrable. *Fazio*, 340 F.3d at 392. The Sixth Circuit has held that Fair Labor Standards Act may be arbitrable. *Floss*, 211 F.3d at 313. Accordingly, Zink's federal statutory claims may be arbitrated.

Having found that the parties have entered a valid arbitration agreement which covers Zink's claims, none of which are nonarbitrable, the Court **GRANTS** Belle Tire's Motion to Dismiss (ECF No. 7) in favor of arbitration.

Lastly, the Court must determine whether to stay the proceedings pending the outcome of the arbitration. *Fazio*, 340 F.3d at 392. Under Section 3 of the FAA, a federal court must, "on application of one of the parties," stay proceedings until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3; *see Smith*, 601 U.S. at 474. When neither party requests a stay, courts typically dismiss the case without prejudice upon finding that the claims are arbitrable. *See*, *e.g.*, *King v. Commemorative Brands, Inc.*, No. 22-294, 2022 WL 3045009, at *2 (W.D. Ky. Aug. 2, 2022); *cf. Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518 (6th Cir. 2017) ("The second requirement,

that one of the parties request a stay, is the key requirement in this case. Neither party requested a stay in the district court.”).

Here, neither party has requested a stay. Accordingly, the Court **DISMISSES THE CASE WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Belle Tire’s motion to compel arbitration (ECF No. 7) and **DISMISSES** the case **WITHOUT PREJUDICE**.

**SO ORDERED**.

Dated: August 17, 2026

s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE